UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAYLE AMANDA LACY, | Case No. 19-cv-00140-SI |
| Plaintiff, | **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| ANDREW SAUL[1], | Re: Dkt. Nos. 15, 16 |
| Defendant. | |

The parties have filed cross-motions for summary judgment in this Social Security appeal. Dkt. Nos. 15, 16. Based upon the Court's review of the parties' papers and the Administrative Record ("AR"), the Court hereby GRANTS plaintiff's motion and DENIES defendant's motion. This matter is REMANDED for immediate payment of benefits.

## BACKGROUND

On January 9, 2018, the date of the administrative hearing in this case, plaintiff Gayle Amanda Lacy was a fifty-year-old female with some high school education. AR at 106, 1088. Her work history includes packing warehouse shipments and cleaning airplanes. *Id*. at 134-35. She ceased working in 2006, and in January 2007 she applied for disability insurance benefits ("DIB") under Title II of the Social Security Act and for Supplemental Security Income ("SSI") under Title XVI of the Act. *Id*. at 265-66. After a hearing on February 24, 2009, an Administrative Law Judge ("ALJ") determined that plaintiff was disabled as of October 17, 2006, due to limitations arising from Post-Traumatic Stress Disorder ("PTSD") and Borderline Intellectual Functioning. *Id*. at 76, 134, 148.

---

[1] Andrew Saul, Commissioner of Social Security, is substituted for his predecessor, Nancy A. Berryhill, pursuant to Federal Rule of Civil Procedure 25(d).

**I.      Procedural History**

On November 6, 2014, the Social Security Administration ("SSA") initiated a Continuing Disability Review ("CDR") of plaintiff's eligibility for benefits. *Id*. at 288. The SSA concluded that she had medically improved as of March 2015; thus, her disability had ceased. *Id*. at 197-200. Plaintiff requested a hearing; it was held on January 9, 2018, before ALJ E. Alis. *Id*. at 56, 105. Plaintiff was represented by counsel at the hearing,[2] and Ruth A. Arnush, impartial vocational expert, testified. *Id*. at 74. No medical expert testified at the hearing. The ALJ issued a decision on March 20, 2018, finding that plaintiff was not disabled as of May 31, 2015. *Id*. at 71-88. On November 9, 2018, the Appeals Council denied plaintiff's request to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *See id*. at 1-6. Plaintiff then filed an action for judicial review pursuant to 42 U.S.C. § 405(g). Dkt. No. 1. The parties cross-moved for summary judgment. Dkt. Nos. 15, 16.

**II.     Medical History**

From 2006 to 2007, prior to her disability determination in 2009, plaintiff underwent treatment for breast cancer. AR at 533, 559. Plaintiff also has a long history of psychological trauma. *Id*. at 440. Throughout her period of disability, plaintiff's medical records include numerous primary care, specialist, and emergency room visits. *See, e.g., id.* at 522, 909, 1022. These records show a history of depression and PTSD as well knee and foot pain. *Id*. Plaintiff also has a history of coronary artery disease. *Id*. at 80.

In addition to reviewing treatment records, the ALJ considered the opinions of twelve practitioners—three treating, five examining, and four non-examining consulting. *Id*. at 82-85.

**A.      Mental Health Treatment and Evaluation**

Plaintiff's records first include a diagnosis for depression in 2010. *Id*. at 581. In 2009, an ALJ determined she was disabled due in part to the effects of PTSD. *Id*. at 76. She has also reported

---

[2] The same counsel now represents plaintiff in this appeal.

United States District Court
Northern District of California

anxiety and panic attacks. *Id*. at 1007.

### 1. Dr. Acenas, MD (Examining Psychiatrist)

On February 11, 2015, plaintiff met with Dr. Anoinette Acenas, who conducted a comprehensive psychiatric evaluation as part of the SSA's CDR process. *Id*. at 440. Dr. Acenas noted that plaintiff was depressed and suffered from PTSD, and that her stressors included multiple medical conditions. *Id*. at 442. Dr. Acenas observed that plaintiff was able to remember two out of three objects in three minutes and concluded that plaintiff was able to understand and follow complex and detailed instructions. *Id*. Dr. Acenas opined that plaintiff was not impaired in any functional area. *Id*. at 442-43.

### 2. Dr. Smith, MD, and Dr. Olaya, MD (Non-Examining Consultants)

In March 2015, SSA psychological consultants Drs. Smith and Olaya found plaintiff's impairments to be non-severe and concluded that she had no functional limitations. *Id*. at 84. Neither doctor examined plaintiff or accessed her longitudinal records. *Id*.

### 3. Dr. Hipolito, MD (Treating Psychiatrist)

On April 20, 2016, plaintiff sought psychiatric treatment at the Schuman-Liles Clinic. She reported suffering from depression, low appetite, and panic attacks. *Id*. at 1006-09. Dr. Hipolito diagnosed her with major depressive disorder, recurrent severe; and he prescribed Mirzapine for depression, anxiety, insomnia, and low appetite. *Id*. at 1009.

### 4. Dr. Weber, MD (Treating Psychiatrist)

Slightly less than a year later, on March 9, 2017, plaintiff again sought treatment at Schuman-Liles. *Id*. at 1002. Dr. Armeen Weber examined her and diagnosed her with major depressive disorder and PTSD. *Id*. at 1004. At subsequent appointments in June, August, and November of 2017 Dr. Weber continued to remark that plaintiff was tearful and depressed. *Id*. at 994, 999, 1004, 1075. In a letter to plaintiff's attorney dated November 30, 2017, Dr. Weber opined

that he

> would expect her symptoms to be increased by the demands of work. She would likely need to take breaks during the day due to her difficulty staying focused. Due to her mood instability and irritability, I expect she would have difficulty sustaining appropriate and consistent social functioning, and would likely need to limit her contact with the general public and peers in the workplace. I expect her attendance at work to fluctuate given her symptoms of mood instability and anxiety, causing her to be absent from work 3 days per month or more.

*Id*. at 1072.

### 5. Dr. Miller, PsyD (Examining Psychologist)

At the SSA's request, Dr. Keiko Miller conducted a second psychological evaluation of plaintiff on August 30, 2017. *Id*. at 1012. Dr. Miller noted that plaintiff had an unspecified depressive disorder and was functional but teary. *Id*. at 1012-15. Based on cognitive and psychological assessments, Dr. Miller concluded that plaintiff had limitations in various areas of functioning. *Id*. at 1015-16. These ranged from no limitation in the ability to accept instructions, to significant limitations in the ability to handle normal work-related stress. *Id*. at 1016.

### 6. Dr. Pearce, PsyD, and Ms. Molla, MA, trainee (Treating Psychotherapists)

At the request of her treating psychiatrist, Dr. Weber, plaintiff began psychotherapy sessions at the Hume Center on September 8, 2017. Her treatment team included Suada Molla, M.A., trainee, supervised by Elizabeth Pearce, Psy.D. *Id*. at 1078, 1085. Plaintiff attended four scheduled sessions through November 5, 2017. *Id*. at 1082-1103. She also called Ms. Molla on November 15, 2017. *Id*. at 1092. Throughout their sessions Ms. Molla and Dr. Pearce observed that plaintiff exhibited a sad and depressed mood and had frequent crying spells. *Id*. at 1098-1100. They noted both in initial treatment records, and in a Mental Impairment Questionnaire, that plaintiff's depression impacted her "daily life, parenting responsibilities, self-care, housework, and dynamics with her family members." *Id*. at 1131. They went on to state "[i]n employment settings, Ms. Lacy would likely have marked/severe challenges with attendance, dealing with other people . . . responding to work demands and meeting expectations, concentrating, [and] maintaining stable mood (i.e. inability to emotionally self-regulate)." *Id*. They indicated that she would likely be absent from work four or

more days per month. *Id*. at 1135.

### B.    Physical Health Treatment and Evaluation

Plaintiff has also reported a variety of physical impairments, including persistent foot and knee pain as well as recurring nausea, vomiting, headaches, and clogged arteries in her heart. *Id*. at 76, 80, 429, 445, 520.

#### 1.    Dr. Karon, MD (Examining Physician)

Dr. Jeffrey Karon examined plaintiff on January 18, 2015, as part of the CDR process. *Id*. at 426. He also reviewed her Disability Report and one emergency room record from December 2014. *Id*. During the exam Dr. Karon found plaintiff to be depressed with decreased range of motion in her left knee. *Id*. at 429. He also noted that her complaints of nausea necessitated medical follow up and that her resting pulse was extremely elevated. *Id*. at 429-30. He advised her to go directly to an emergency room to have her heart rate evaluated. *Id*. at 430. Dr. Karon concluded that plaintiff had a walking capacity of up to two hours, a standing capacity of up to two hours, and the ability to lift twenty-five pounds frequently and fifty pounds occasionally. *Id*.

#### 2.    Dr. Taylor, MD, and Dr. Gilpeer, MD (Non-Examining Consultants)

On February 2, 2015, Dr. G. Taylor completed a physical RFC assessment but did not examine plaintiff. *Id*. at 431. He disagreed with the "IMCE" opinion[3] that plaintiff could only stand or walk two hours, stating that it is "completely inconsistent w/other evidence in file from varying sources including the clmnts own ADL form." *Id*. at 437. He concluded that plaintiff could walk or stand up to six hours per day and lift twenty-five pounds frequently and fifty pounds occasionally. *Id*. at 432. Dr. E.L. Gilpeer came to essentially the same conclusions in August 2015. *See id*. at 497, 503.

---

[3] Presumably, Dr. Karon's Internal Medicine Consultant Evaluation.

### 3. Dr. Narra, MD (Treating Physician)

Dr. Narra is plaintiff's primary care physician. *Id*. at 130. Since September 2016, he saw her seven times and diagnosed her with peripheral neuropathy, paresthesia of both feet, and depression. *Id*. at 963-82. He ordered and reviewed vascular and nerve tests on which he based his diagnoses. *Id*. at 992. Dr. Narra has also prescribed—and frequently refilled—treatments for pain and nausea. *Id*. at 967. Dr. Narra opined in a letter to plaintiff's attorney dated January 5, 2018:

> After more than a year of following Ms. Lacy, my assessment is that she is unable to stand or walk for 6 hours or more during an 8 hour workday due to her physical conditions. It is medically necessary that Ms. Lacy is able to elevate her left leg off the ground, as needed, throughout the workday, to relieve pain symptoms. I also expect Ms. Lacy will need to take unscheduled breaks during the work day due to her chronic pain. Her impairments are also likely to produce good days and bad days so that, in an employment setting, I estimate Ms. Lacy will be absent from work about 3 days per month.

*Id*. at 1126.

### 4. Dr. Sharma, MD (Examining Physician)

On September 12, 2017, Dr. Satish K. Sharma, a neurologist/internist, conducted an additional disability determination exam. *Id*. at 1048. Dr. Sharma did not review any of plaintiff's records. Plaintiff relayed a history of knee and foot pain as well as chest pain, headaches, and nausea. *Id*. at 1048-49. Dr. Sharma noted that plaintiff did not require assistance to ambulate, but her left knee was swollen and tender. *Id*. at 1050. Dr. Sharma identified the following diagnostic impressions: low back pain with intermittent radicular pain in lower extremities, left knee pain secondary to degenerative joint disease, migraine headaches, chest pain significant for angina, peripheral vascular disease, bilateral plantar fasciitis, and depression. *Id*. at 1051. Dr. Sharma concluded that plaintiff could walk or stand for six hours cumulatively in an eight-hour workday with appropriate breaks and could carry twenty pounds occasionally and ten pounds frequently, noting that "[b]ending and stooping should be done occasionally." *Id*.

## I.     Standard of Review

The Social Security Act authorizes judicial review of final decisions made by the Commissioner.  42 U.S.C. § 405(g).  A court's review of a disability determination is limited, and a final administrative decision may be altered "only if it is based on legal error or if the fact findings are not supported by substantial evidence."  *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987).  Substantial evidence is the relevant evidence in the entire record "which a reasonable person might accept as adequate to support a conclusion."  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  Substantial evidence consists of "more than a mere scintilla but less than a preponderance."  *Young v. Sullivan*, 911 F.2d 181, 183 (9th Cir. 1990).  Courts "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  The substantial evidence standard is a deferential standard of review.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A district court may enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.  42 U.S.C. § 405(g).  If additional proceedings can remedy defects in the original administrative proceedings, a Social Security case should be remanded.  *See Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).  A decision of the ALJ will not be reversed for errors that are harmless.  *Burch*, 400 F.3d at 679 (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991)).

## II.     Continuing Disability Review

"Once a claimant has been found to be disabled, . . . a presumption of continuing disability arises in her favor."  *Bellamy v. Sec'y of Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985) (citing *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983)); *see also Medina v. Colvin*, No.

United States District Court
Northern District of California

14-CV-01967-DMR, 2015 WL 5448498, at *12 (N.D. Cal. Aug. 21, 2015) (discussing the Ninth Circuit's reaffirming this presumption after 1984 amendments to the Social Security Act). The Commissioner periodically reviews whether the claimant continues to be entitled to benefits. *See* 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(a).

At continuing disability review, an ALJ conducts an eight-step inquiry:[4]

(1) Are you engaging in substantial gainful activity? If you are (and any applicable trial work period has been completed), we will find disability to have ended (see paragraph (d)(5) of this section).

(2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart? If you do, your disability will be found to continue.

(3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).)

(4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, see step (6).

(5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or

---

[4] This is the test for Title II cases. The evaluation process for Title XVI cases is a seven-step process that begins with the question whether the claimant has an impairment or combination of impairments which meets or equals a Listing (i.e., step two of the Title II inquiry). *See* 20 C.F.R. §§ 404.1594, 416.994.

mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

(7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider whether you can do other work given the residual functional capacity assessment made under paragraph (f)(7) of this section and your age, education, and past work experience (see paragraph (f)(9) of this section for an exception to this rule). If you can, we will find that your disability has ended. If you cannot, we will find that your disability continues.

(9) We may proceed to the final step, described in paragraph (f)(8) of this section, if the evidence in your file about your past relevant work is not sufficient for us to make a finding under paragraph (f)(7) of this section about whether you can perform your past relevant work. If we find that you can adjust to other work based solely on your age, education, and residual functional capacity, we will find that you are no longer disabled, and we will not make a finding about whether you can do your past relevant work under paragraph (f)(7) of this section. If we find that you may be unable to adjust to other work or if § 404.1562 may apply, we will assess your claim under paragraph (f)(7) of this section and make a finding about whether you can perform your past relevant work.

20 C.F.R. § 404.1594(f).

## ALJ DECISION

In determining plaintiff's continuing disability status, the ALJ applied the eight-step analysis in accordance with 20 C.F.R. § 404.1594 and the seven-step analysis in accordance with 20 C.F.R. § 416.994. AR at 75. At step one of the eight-step analysis, the ALJ determined that plaintiff did not engage in substantial gainful activity through the date of his decision. *Id.* at 76.

At step two, the ALJ found that plaintiff had medically determinable impairments: peripheral mixed polyneuropathy, meniscal tear of the left knee, major depressive disorder, and PTSD; but he determined that these impairments did not meet, or medically equal, the severity of an impairment in a Listing. *Id.* at 77. The ALJ specifically considered the criteria of Listings 1.02A, 11.14, 12.04, and 12.15. *Id.*

At step three, the ALJ found that medical improvement occurred as of May 31, 2015. *Id.* at 79. He discussed the medical evidence leading to the Comparison Point Decision ("CPD") in 2009

9

and concluded that plaintiff's mental impairments had improved to where "she could perform simple, routine tasks, which involve simple, work-related decision making."[5]  *Id*.

At step four, the ALJ found that plaintiff's "medical improvement" is related to the ability to work because "it has resulted in an increase in the claimant's residual functional capacity."  *Id*. Because of this finding at step four, the ALJ skipped to step six.  *See* 20 C.F.R. § 404.1594(f)(4).

At step six, the ALJ concluded that "the claimant has continued to have a severe impairment or combination of impairments."  AR at 80.  He found that her "impairments of peripheral mixed polyneuropathy, left knee meniscal tear, major depressive disorder, and PTSD cause more than minimal limitation in the claimant's ability to perform basic work activities."  *Id*.  He also found that the clogged arteries, nausea, and headaches that plaintiff noted in her CDR have not limited her ability to work because "the evidence does not support that these are severe impairments, and her allegations are not consistent with the evidence."  *Id*.  He went on to address the post-CPD medical evidence leading to his findings.  Discussing her nausea specifically, he noted that while her provider had prescribed Promethazine to treat it, plaintiff had "generally denied nausea or vomiting to him." *Id*.  He reasoned "this treatment controlled her nausea symptoms, and that the claimant does not have a severe impairment linked to her report of these symptoms."  *Id*.  Additionally, the ALJ found that plaintiff's Borderline Intellectual Functioning, which was found to be a severe impairment at the time of the CPD, had ceased to be a medically determinable impairment since May 31, 2015. *Id*. at 81.

Based on his findings the ALJ determined:

> Since May 31, 2015, based on the current impairments, the claimant has had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: the claimant can lift and carry up to 50 pounds occasionally and 25 pounds frequently; she can stand and walk for 2 hours in an 8-hour workday; she has no limitation with regards to sitting; she can occasionally stoop, crouch, kneel, crawl, and balance; she can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; she is limited to performing simple, routine tasks, which involve simple, work-related decision making; she requires a stable work

---

[5] The Comparison Point Decision as used here is the date of "the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." *See* 20 C.F.R. § 404.1594(b)(1).  The ALJ determined and neither party disputes that the CPD in this case is February 24, 2009, the date that plaintiff was most recently found to have a continuing disability. *See* AR at 76.

environment, meaning few changes, if any, in the day-to-day work setting and in the tools and or processes used to accomplish tasks.

*Id.*

At step seven, the ALJ found that "the claimant has been unable to perform past relevant work." *Id.* at 85. At step eight, he concluded that "considering the claimant's age, education, work experience, and residual functional capacity based on the current impairments, the claimant has been able to perform a significant number of jobs in the national economy." *Id.* at 86. He reasoned that plaintiff's ability to perform all, or substantially all, of the requirements of medium work was impeded by additional limitations, but he determined—based on the testimony of the vocational expert—that a significant number of jobs remained "which would allow an individual to sit for most of the workday." *Id.* at 87. Accordingly, the ALJ found plaintiff's disability ended as of May 31, 2015. *Id.*

## DISCUSSION

Plaintiff moves for summary judgment, seeking a determination that the ALJ's unfavorable decision is erroneous. Plaintiff argues that the ALJ erred by 1) failing to find her nausea to be a severe impairment, 2) rejecting the opinions of treating providers without specific and legitimate reasons, 3) failing to identify which portions of her testimony were not credible and failing to provide clear and convincing reasons for rejecting her testimony, and 4) finding she had medically improved. Plaintiff further contends that the RFC and the Vocational Expert testimony the ALJ relied on were not supported by substantial evidence and were subsequently incomplete. She requests remand for an award of benefits. Defendant also moves for summary judgment, arguing that plaintiff alleges only harmless error as to the nausea claim. Defendant further contends that substantial evidence supports all of the ALJ's findings and conclusions and that the ALJ's decision is free from reversible error.

### I. Medical Opinions

Plaintiff argues that the ALJ erred in multiple respects when evaluating her treating practitioner's opinions. First, she argues the ALJ erred in giving "little weight" to the opinions of

Drs. Weber, Hipolito, and Pearce and trainee Molla. Second, plaintiff contends that the ALJ erroneously "cherry-picked" evidence out of context when providing reasons for crediting or rejecting medical opinions.

In this Circuit, courts distinguish among the opinions of three types of physicians: (1) treating physicians who have an established relationship with the claimant; (2) examining physicians who see the claimant but do not treat her; and (3) non-examining physicians who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be given greater weight than that of an examining or non-examining physician. *Id.* Similarly, an examining physician's opinion usually should be given more weight than that of a physician who has not examined the claimant. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

For claims filed before March 27, 2017, such as plaintiff's, "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). When a treating physician's opinion is contradicted, and deemed not to have *controlling weight*, Social Security regulations provide that an ALJ must apply the factors in 20 C.F.R. § 404.1527(c)(2)(i-ii) (length of treatment relationship and the frequency of examination; nature and extent of the treatment relationship) and (c)(3-6) ("supportability," consistency, specialization, and other factors that tend to support or contradict the opinion) in determining *how much weight* to give the treating doctor's opinion. *Garrison,* 759 F.3d. at 1012 n.11. While the ALJ is not required to specifically recite each factor in the decision, the record must "reflect that the ALJ actually considered and applied the appropriate factors." *Standen v. Berryhill*, No. 2:16-cv-1267-EFB, 2017 U.S. Dist. LEXIS 156775, at *8 (E.D. Cal. Sept. 25, 2017).

Should the ALJ reject the uncontradicted opinion of a treating or examining physician, he must provide clear and convincing reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even where a treating physician's opinion is contradicted by another physician's

opinion, an ALJ may not reject the opinion without "specific and legitimate reasons that are supported by substantial evidence" in the record. *Garrison*, 759 F.3d at 1012; *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)).

The "substantial evidence" standard requires the ALJ to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] his interpretation thereof, and mak[e] findings." *Reddick*, 157 F.3d at 725. Conclusory statements by the ALJ are insufficient; he "must set forth [his/]her own interpretations and explain why they, rather than the doctors', are correct." *Id.* An ALJ errs if he "does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another[.]" *Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

In determining what evidence is substantial, an ALJ must accurately characterize the record and consider the evidence in context. *Davila v. Colvin*, No. CV 14-2844-DFM, 2014 WL 5660455, at *4 (C.D. Cal. Nov. 4, 2014). An ALJ may not selectively rely on some entries in the record while ignoring others. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). "In other words, an ALJ cannot cherry-pick evidence to support her findings." *Sells v. Comm'r of Soc. Sec. Admin.*, No. CV-16-04330-PHX-JAT, 2017 WL 3167626, at *11 (D. Ariz. July 26, 2017).

## A.      Treating Psychiatrist Dr. Weber

Plaintiff argues that the ALJ erred in giving "little weight" to the opinions of treating psychiatrist, Dr. Weber. Pl.'s Mot. at 10. For the reasons that follow, the Court finds that the ALJ erred when he failed to sufficiently support the weight given to Dr. Weber's medical opinion, thus making conclusions regarding plaintiff's RFC that were not supported by substantial evidence.[6]

---

[6] Plaintiff also challenges the weight given to Dr. Hipolito's treating record, but she does not make any distinct arguments regarding the weight the ALJ afforded his opinion. Notably, Dr. Hipolito only treated plaintiff once, and Dr. Hipolito did not offer a clear opinion on her disability, so the arguments raised about his treating records do not present the same concerns that are present

First, the ALJ's decision to assign "little weight" to Dr. Weber's opinion was erroneous because the ALJ "fail[ed] to apply the appropriate factors in determining the extent to which the opinion should be credited." *See Trevizo*, 871 F.3d at 676; 20 C.F.R. § 404.1527(c)(2)-(6); AR at 84. The ALJ stated:

> [t]he opinions from Dr. Weber and Michael Hipolito, MD receive little weight, who [sic] both assessed the claimant with a Global Assessment of Function ("GAF") score of 50, indicating serious impairment. Their conclusions are not supported by the mental status exam observations (e.g. her orientation, appearance, behavior, speech, thought process, attention, insight, and judgment were within normal limits).

AR at 84-85. This explanation is insufficient, because in determining the weight to give a treating practitioner's opinion the ALJ must consider the factors in 20 C.F.R. § 404.1527(c). These factors include the practitioner's relationship with the plaintiff, the nature and extent of his treatment, the consistency of his treatment and his area of specialization. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ gave no indication that he considered any of these factors. *See* AR at 84-85. The ALJ did not state that Dr. Weber was plaintiff's treating psychiatrist or that Dr. Weber met with her four times during an eight-month period. The ALJ did not refer to Dr. Weber's area of specialization as a psychiatrist, but simply referred to him as "Armeen Weber, MD, her medication prescriber[.]" *See id.* at 83. The ALJ's statements about Dr. Weber do not reflect that he considered and applied the factors listed 20 C.F.R. § 404.1527(c)(2)-(6) when he determined that "little weight" should be given to Dr. Weber's opinion. This was error.

The ALJ also erred in rejecting two of Dr. Weber's specific opinions. The reasons he provided to support his rejection were not supported by substantial evidence that was reflective of the record as a whole. *See Sells*, 2017 WL 3167626, at *11. First, the ALJ rejected Dr. Weber's opinion that plaintiff "would need to have limited contact with the general public and workplace peers," finding it was "not consistent with [plaintiff's] ability to socialize with her friends, family, to shop in stores, and to attend meetings at her son's school." AR at 85. The ALJ's reliance on plaintiff's supposed social activities was not supported by substantial evidence in the record. For instance, in the document the ALJ cited to support the determination quoted above, in response to a

---

with the ALJ's treatment of Dr. Weber's opinion.

question asking how often she goes outside, plaintiff responded, "Not that much get tried [sic]." *Id*. at 315. When asked what kinds of things she does with others, plaintiff's response was "my kid come by we talk or watch T.V."[7] *Id*. at 316. Plaintiff also stated that she goes "nowhere" on a regular basis. *Id*. During the administrative hearing plaintiff testified that she had difficulty being around people and that she did not "even like to really be outside period." *Id*. at 125. She does not attend family functions, nor does she babysit her grandchildren much because the noise irritates her. *Id*. at 126. She testified that she gets nervous crossing the street "because people are watching when I walk[,]" and so she avoids crosswalks. *Id.* at 125-26. Additional documents in the record reflect plaintiff's irritability and panic attacks. *See id*. at 126, 134, 1092, 1094-96. Furthermore, multiple treating mental health practitioners noted or concluded that plaintiff had difficulties being around people. *See id*. at 1007, 1072, 1131. Thus, the reasons the ALJ provided for rejecting Dr. Weber's opinion regarding plaintiff's need for limited contact with the public and peers are not specific, legitimate, nor are they supported by the record as a whole.

Second, the ALJ rejected Dr. Weber's opinion that plaintiff "would be absent from work three days per month or more due to her mood instability and anxiety." *Id*. at 85. The ALJ reasoned that Dr. Weber's opinion was "not consistent with the claimant's reports of her many activities (e.g. taking care of her son, cooking, cleaning, doing laundry, ironing, talking and watching television with her children, and socializing with friends)." *Id*. One of the documents to which the ALJ cited in support of this finding was the function report plaintiff completed in November 2014. *See id.* at 85, 312-19. While plaintiff did report engaging in these activities, she also stated that she cooks and cleans "a little" and then she lays down before she can do "a little more cooking, cleaning." *Id*. at 313. She further commented that she cooks "one thing at a time" and that activities such as laundry, ironing, and cleaning take her "all day or 2 day." *Id*. The Ninth Circuit has explained, "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment

---

[7] In response to a question about how often plaintiff socializes with her children she stated "2 month." While it is unclear if this reference was meant to mean once every two months or twice a month, it supports—rather than conflicts with—Dr. Weber's opinion.

of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ's reliance on plaintiff's activities of daily living, taken out of context, are not a specific and legitimate reason to discount Dr. Weber's opinion.

### B. Treating Psychologist Dr. Pearce and Trainee Molla

Plaintiff also argues that the ALJ wrongly rejected the opinion of her treating therapy team, Dr. Pearce and trainee Molla, without specific or legitimate reasons supported by substantial evidence. Pl.'s Mot. at 12. The Court agrees.

Dr. Pearce and Ms. Molla were plaintiff's treating therapists, who saw her at the suggestion of her treating psychiatrist Dr. Weber. AR at 1000. As treating practitioners, their opinion—even when contradicted—is entitled to deference and cannot be rejected without specific and legitimate reasons supported by substantial evidence. *See Lester*, 81 F.3d at 830. The ALJ gave "little weight" to their opinion. AR at 85. The ALJ rejected their findings that plaintiff has "generally marked limitations in areas related to understanding, remembering, and applying information, to concentrating, persisting, or maintaining pace, and in adapting or managing herself" and to their opinion that she "would be absent from work more than 4 times a month and would be off task for more than 30% of the work day[.]" *Id.* The ALJ reasoned that these conclusions were not persuasive because Dr. Pearce and Ms. Molla did not administer any cognitive tests to plaintiff, that their opinions were inconsistent with their mental status exam observations, and that their findings were not consistent with plaintiff's report of her activities discussed above. *Id.* However, these reasons are not supported by substantial evidence in the record.

For one, Dr. Miller—a psychologist who examined plaintiff at the SSA's request and who did administer cognitive tests— came to similar conclusions as Dr. Pearce and trainee Molla in certain areas. Dr. Miller found plaintiff significantly limited in the ability to complete complex tasks and in the ability to handle normal work-related stress. *Id.* at 1015-16. Dr. Miller also found plaintiff moderately limited in her ability to complete a normal work day while staying consistent with adequate pace and productivity without interruptions from her psychiatrist conditions. *Id.* at 1016. The ALJ gave Dr. Miller's opinion "significant weight" but did not address those areas in

which Dr. Miller's opinion was similar to that of Dr. Pearce and Ms. Molla. *See id.* at 84. Thus, the reasons the ALJ gave for attributing "little weight" to Dr. Pearce and Ms. Molla's opinion is not supported by substantial evidence in the record, nor is it consistent with the weight he gave to Dr. Miller.[8]

Furthermore, Dr. Pearce and Ms. Molla's opinions regarding plaintiff's mental limitations are not inconsistent with their mental status exam observations. While it is true that their observations noted that plaintiff was "cooperative" and had "linear and coherent" thought processes, and intact judgment, they also stated that she had "poor insight," "underactive psychomotor responses," slow speech, suspicions, and asked for questions to be repeated and clarified. *Id.* at 1088-89. Their mental status exams also included observations that plaintiff was withdrawn, engaging in isolating behaviors, and avoiding others. *Id.* at 1090. Their mental status examinations are not inconsistent with Dr. Pearce and Ms. Molla's opinions regarding plaintiff's limitations.

### C. Examining Psychologist Dr. Miller

Plaintiff's final argument in regard to the ALJ's mental health findings is that while the ALJ stated that he gave "significant weight" to examining psychologist Dr. Miller's opinion, he does not address the majority of the limitations Dr. Miller mentions in her opinion, and he only appears to incorporate one of Dr. Miller's limitations into plaintiff's RFC. Pl.'s Mot. at 14-15. In determining the RFC, the ALJ discussed four areas in which Dr. Miller found plaintiff to have no limitation and only one where she was found to have a limitation. *See* AR at 84. In actuality, the record reflects that Dr. Miller found mild, marked, and severe limitations in a number of areas, not simply the one that the ALJ addressed. *See id.* at 1015-16, 1063-64. "The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." *Craig v. Astrue*, 269 F. App'x 710, 712 (9th Cir. 2008) (quoting *Robinson v. Barnhart*, 366 F.3d

---

[8] The most notable area where Dr. Miller's opinion differs from Dr. Pearce and Ms. Molla's is in the area of attendance. While Dr. Pearce and Ms. Molla opined that plaintiff would likely be absent from work more than four times a month, Dr. Miller found that her ability to maintain regular attendance was not significantly limited. AR at 1016, 1135. However, the ALJ did not cite this as a reason to reject the opinions of Dr. Pearce and Ms. Molla.

1078, 1083 (10th Cir. 2004)). The Court agrees with plaintiff that the ALJ's selective weighing of

Dr. Miller's opinion was error.


### D.        Treating Physician Dr. Narra

Plaintiff argues that the ALJ erred in affording "little weight" to Dr. Narra's treating opinion

while giving "substantial weight" to examining physician Dr. Karon's opinion. Pl.'s Mot. at 14.

Plaintiff challenges the rejection of Dr. Narra's opinions regarding the functional limitations

associated with her polyneuropathy and left knee pain—conditions which the ALJ found to be

severe impairments. *Id.* For the reasons that follow, the Court finds the ALJ erred in rejecting Dr.

Narra's opinion without providing specific and legitimate reasons supported by substantial evidence

in the record.

Specifically, plaintiff argues that the ALJ erroneously dismissed Dr. Narra's opinion that she

would need to take unscheduled breaks to elevate her leg, and that she would be absent from work

three days per month. In rejecting Dr. Narra's opinions the ALJ stated,

> There is no support for a finding that she would need to elevate her leg, since the
> vascular ultrasound showed normal arterial blood flow in her lower extremities, and
> [Dr. Narra's] treating notes do not include an instruction for her to elevate her leg or
> reports from the claimant to him that she needs to elevate her leg to reduce pain. His
> findings regarding the unscheduled breaks and her absences are not consistent with
> her relatively conservative pain management regimen (Gabapentin and Norco), and
> with the claimant's reports of her activities (e.g. taking care of her minor son,
> shopping in stores, cooking, cleaning, doing laundry, and ironing).

AR at 83.

Thus, the ALJ gave two reasons for rejecting Dr. Narra's opinion that plaintiff would need

to elevate her leg. First, he said that a vascular ultrasound indicated normal arterial blood flow in

plaintiff's leg, citing to an ultrasound performed on July 24, 2015. *See id.* (citing AR at 1045).

However, the ALJ does not cite to any authority or medical opinion explaining how normal arterial

blood flow is inconsistent with a need to elevate a leg. In concluding that there is no support for a

finding that plaintiff would need to elevate her leg based on the result of the vascular ultrasound,

the ALJ "independently review[ed] and interpret[ed] the laboratory reports . . . [and] impermissibly

substituted his own judgment for that of a physician[.]" *See Ferguson v. Schweiker*, 765 F.2d 31,

37 (3d Cir. 1985). This was error. "[A]n ALJ is not free to set his own expertise against that of a physician who presents competent evidence." *Id*. The ALJ also failed to discuss multiple nerve tests that Dr. Narra ordered that revealed abnormal nerve functioning. *See* AR at 959-60, 989-92. The ALJ's reliance on a normal vascular ultrasound, removed from the context of the record's entirety, is not a legitimate reason for rejecting Dr. Narra's findings. The Court also notes that Dr. Karon, whose opinion the ALJ gave substantial weight, did not have access to plaintiff's nerve test results. *See id*. at 426.

Second, the ALJ reasoned that because Dr. Narra's treating notes did not include an instruction that plaintiff should elevate her leg, his opinion that she must do so was unsupported. Again, this is not a legitimate reason for rejecting Dr. Narra's treating opinion, where Dr. Narra wrote in a letter dated January 5, 2018, (i.e., after treating plaintiff on a monthly or bimonthly basis for over a year) that such treatment was necessary. *See id.* at 1126. Dr. Narra's recommendation was also consistent with plaintiff's January 9, 2018 hearing testimony that she elevates leg for about thirty minutes three or four times each day. *See id*. at 118.

In rejecting Dr. Narra's opinion, the ALJ also referenced plaintiff's "activities." For the reasons discussed above, the Court does not find plaintiff's activities to be a specific and legitimate reason for rejecting her treating physician's opinion. The Court concludes that the ALJ erred in failing to provide specific and legitimate reasons supported by substantial evidence for giving little weight to Dr. Narra's opinion.

## II.    Plaintiff's Symptom Testimony

Plaintiff also contends that the ALJ erred when he 1) failed to identify which portions of her testimony he found not credible and 2) neglected to provide clear and convincing reasons for rejecting her testimony. Pl.'s Mot. at 17. The Ninth Circuit has established a two-step analysis for determining how to credit a claimant's symptom testimony:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . . If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific,

clear and convincing reasons for doing so. This is not an easy requirement to meet:
The clear and convincing standard is the most demanding required in Social Security
cases.

*Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15). If the ALJ finds the claimant's

allegations of severity are not credible, "[t]he ALJ must state specifically which symptom testimony

is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273,

1284 (9th Cir. 1996). "These findings, properly supported by the record, must be sufficiently

specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on

permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain."

*Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (internal quotation marks and citation

omitted).

Here, at the first step of the credibility test, the ALJ found that plaintiff's "current medically

determinable impairments could reasonably be expected to produce the alleged symptoms[.]" AR

at 82. The ALJ made no finding of malingering. Moving to the second step of the credibility

analysis, the ALJ found

the claimant's statements concerning the intensity, persistence and limiting effects
of these symptoms are not entirely consistent with the objective medical and other
evidence for the reasons explained in this decision. Accordingly, these statements
have been found to affect the claimant's ability to work only to the extent they can
reasonably be accepted as consistent with the objective medical and other evidence.

*Id*. Specifically, the ALJ discredited plaintiff's statements regarding 1) depressed mood and 2) knee

and foot pain.

First, the ALJ discredited plaintiff's statements regarding her depressed mood by referencing

that she had

no history of psychiatric hospitalizations. In addition, during her interview with the
CDI investigator, a review of her prescription bottles indicated that she is not taking
her medications as directed or that she does not need to take the medications. When
asked, she was vague in explaining why she is not taking the medications as
prescribed . . . . Together, this suggests that her depression symptoms were not as
severe as alleged, or that she was not compliant with Dr. Weber's advice regarding
taking her medication.

*Id*. at 83-84.

Before denying benefits because of a failure to follow treatment, the ALJ must conduct an

inquiry into the circumstances of the non-compliance and whether the treatment prescribed can

restore the plaintiff's ability to work. *Byrnes v. Shalala*, 60 F.3d 639, 641 (9th Cir. 1995). Here, the ALJ cited a Summary Report of Investigation authored by the Cooperative Disability Investigations Unit. The report contains the observations and opinions of two investigators who met with plaintiff at the SSA field office on November 19, 2014 and at her home on December 10, 2014. The report stated, "A review of Subject's prescription bottles indicate that the Subject is not taking her medications as directed or she doesn't need to take the medication. When the CDI Investigator asked her to provide an explanation, she was vague in explaining why she is not taking the medications as prescribed." AR at 334. The underlying report shows that the investigators listed the medication bottles found in plaintiff's home, noted the day on which each medication was prescribed, and counted how many pills remained in each bottle in order to reach the conclusion that plaintiff was not taking her medications as prescribed. *See id.* at 334, 339; *see also id.* at 83-84. The medical records contain no notes from treating doctors or other indications that plaintiff was not compliant with her prescriptions. And the ALJ did not inquire as to the circumstances of plaintiff's alleged noncompliance; he simply accepted the investigator's statement that plaintiff was not taking her medications. *See id.* at 83, 334. At the hearing, the ALJ asked plaintiff, "Do you forget to take like medications and things like that?" *Id.* at 127. However, plaintiff did not respond to that portion of the question, instead answering that she has general memory problems like forgetting what she was watching on TV during a commercial break. *See id.* "In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). The ALJ did not develop the record as to whether plaintiff was in fact noncompliant with her prescriptions, and the lack of any corroborating evidence in the record of medication noncompliance means this was not a clear and convincing reason for the ALJ to discredit plaintiff's testimony regarding the extent of her depression.[9]

---

[9] Even if plaintiff were noncompliant with her depression medication, the Ninth Circuit has cautioned that "failure to comply with treatment may represent a symptom of [the] illness" where the claimant has been diagnosed with bipolar disorder and depression. *See Wake v. Comm'r of Soc. Sec.*, 461 F. App'x 608, 609 (9th Cir. 2011) (citing *Nguyen*, 100 F.3d at 1465).

Additionally, plaintiff need not demonstrate a history of hospitalization in order for her statements regarding her depression to be found credible. Hospitalization is not a requirement that must be met under Listing 12.04 (depressive, bipolar and related disorders). Thus, by the SSA's own definition, a claimant may be found disabled on the basis of depression without having ever been hospitalized.

Second, the ALJ apparently discredited plaintiff's statements regarding her foot and knee pain—although precisely what he was discrediting is not clear. He stated,

> the investigator observed [her] with normal gait and station, described her as alert, friendly, and cooperative. At the field office, she did not ask to get up or stretch during the interview, which lasted for over an hour.[10] Moreover, she reported that she had been meeting with her son's school's officials, and was capable of not only managing her funds, but also serving as her son's representative payee. These observations and her reports are not consistent with her impairments being as limiting, [sic] as she alleges.

AR at 85.

In the statement above, the ALJ does not make clear which statements regarding plaintiff's symptoms he is discrediting. "The ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (quoting *Reddick*, 157 F.3d at 722). Furthermore, for the same reasons discussed in section I.A., above, the Court finds that the plaintiff's activities of attending meetings at her son's school and managing her and her son's funds are not specific, clear, and convincing reasons to discredit plaintiff's testimony. Thus, the ALJ erred by discrediting plaintiff's testimony regarding the severity of her mental and physical symptoms.

In sum, the errors the ALJ made in weighing the medical opinions and plaintiff's symptom testimony constitute legal errors that alone warrant reversal. Accordingly, the Court need not and does not reach the remaining arguments plaintiff raises.

III.    **Remedy Upon Remand**

Plaintiff argues that remanding for an award of continuing benefits is appropriate in this

---

[10] The interview lasted sixty-one minutes. AR at 335.

case. Pl.'s Mot. at 24. Defendant disagrees, contending that the record contains conflicting medical opinions and casts doubt on whether plaintiff meets the SSA's eligibility requirements. Def.'s Mot. at 17.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler*, 775 F.3d at 1099). However, under the credit-as-true rule, the Court may order an immediate award of benefits if three conditions are met. First, the Court asks "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Id.* (quoting *Garrison*, 759 F.3d at 1020). Second, the Court must "determine whether there are outstanding issues that must be resolved before a disability determination can be made, . . . and whether further administrative proceedings would be useful." *Id.* (citations and internal quotation marks omitted). Third, the Court then "credit[s] the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability." *Id.* (citing *Treichler*, 775 F.3d at 1101). Even when all three criteria are met, whether to make a direct award of benefits or remand for further proceedings is within the district court's discretion. *Id.* (citing *Treichler*, 775 F.3d at 1101). In rare instances, all three credit-as-true factors may be met but the record as a whole still leaves doubts as to whether the claimant is actually disabled. *Trevizo*, 871 F.3d at 683 n.11. In such instances, remand for further development of the record is warranted. *Id.*

Here, the Court has found that the ALJ failed to provide legally sufficient reasons for rejecting the opinions of plaintiff's treating practitioners—Drs. Weber, Narra, and Pearce and trainee Molla—and in discrediting plaintiff's symptom testimony. The Court further finds that there are no outstanding issues to resolve. The record in this case is over 1100 pages and contains records from numerous doctors' visits and multiple physical and mental health evaluations. Plaintiff's treating practitioners met with her frequently and established relationships with her. The record does not need further development, and further administrative proceedings would not be useful.

Crediting the discredited testimony as true, there is no doubt as to plaintiff's disability. She has severe impairments of major depressive disorder, PTSD, peripheral mixed polyneuropathy, and

1  meniscal tear.  AR at 80.  She also suffers from other conditions including panic attacks, chest pains,

2  and chronic nausea.  *Id*. at 429-430, 1007, 1048, 1098.  The SSA found plaintiff was disabled in

3  2009 on the basis of PTSD and borderline intellectual functioning.  Also notable is the fact that the

4  ALJ assigned little weight to all of plaintiff's treating physicians and based his decision solely on

5  examining clinicians' opinions (and, in the instance of Dr. Miller, on certain portions of examining

6  clinicians' opinions).

7      The hypothetical questions the VE was posed during plaintiff's administrative hearing

8  illustrate plaintiff's disability.  The Ninth Circuit has consistently remanded for an award of benefits

9  in cases where a VE was posed a hypothetical that included the RFC that a claimant would possess

10  if improperly discredited opinions or testimony were taken as true.  *See, e.g.*, *Garrison*, 759 F.3d at

11  1022; *Lingenfelter*, 504 F.3d at 1041; *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396,

12  1401 (9th Cir. 1988).  In those cases, the claimant's counsel presented an alternative hypothetical to

13  the VE that included the claimant's limitations and RFC as described by medical opinion or the

14  claimant's testimony.  In each case the VE responded to that hypothetical by saying that a person

15  with those limitations would be disabled.  And in each case, the appeals court found that based on

16  that evidence, the ALJ would be required to find the claimant disabled on remand if the improperly

17  rejected evidence were credited as true.

18      Here, the ALJ posed multiple hypothetical questions to the VE.  AR at 136-39.  At one point,

19  the ALJ inquired if the need to elevate a leg to waist-level would preclude the work listed.  *Id*. at

20  138.  The VE answered that it would.  *Id*.  The ALJ also asked what percentage of time an individual

21  could be off task before she would no longer be employable.  *Id*.  The VE answered, "Certainly no

22  more than 10% for unskilled jobs."[11]  *Id*.  The ALJ also inquired as to how many absences in a

23  month would be tolerated.  *Id*. at 139.  The VE replied, "No more than one or two even per month

24  would be tolerated on an ongoing basis."  *Id*.  Crediting even just one of the medical opinions and

25  portions of testimony that this Court has determined the ALJ erroneously discredited—plaintiff's

26  need to elevate her leg, the likelihood that she would be absent from work three or more days per

27

28
    _____
    [11] Plaintiff's previous jobs had been classified as unskilled.  AR at 136.

month, and that she would be off task about thirty percent of the time—the VE's testimony provides adequate basis for the Court to conclude that plaintiff is disabled without the need to remand for further proceedings. *See Garrison*, 759 F.3d at 1022.

Defendant's argument that the presence of conflicting medical opinions in the record warrants further proceedings is not persuasive. The Ninth Circuit has ordered an immediate award of benefits based on the credit-as-true rule where conflicting medical opinions were presented. *See Trevizo,* 871 F.3d at 676 (finding that remand for an award of benefits was appropriate despite the court noting inconsistencies in medical opinions). Defendant cites to *Dominguez v. Colvin,* 808 F.3d 403, 405 (9th Cir. 2015), and *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090 (9th Cir. 2014), to support his position. Both cases, however, are distinguishable from the case at bar. In *Dominguez*, remand was warranted because a treating physician had submitted numerous medical opinion statements that were themselves contradictory; remand was necessary to determine which of his opinions should be credited. *Dominguez*, 808 F.3d at 408-09. Here, none of plaintiff's treating providers contradicted themselves or even each other. In fact, plaintiff's treating practitioners, Dr. Weber, Dr. Narra, and Dr. Pearce and Ms. Molla, all came to similar conclusions regarding plaintiff's absences and ability to maintain concentration during the work day. *See* AR at 1072, 1126, 1135. In *Treichler*, the claimant reported varying symptoms to those cited by his treating physicians, and these reports were inconsistent with the claimant's own testimony during his administrative hearing. *Treichler*, 775 F.3d at 1104. Here, there is no evidence that plaintiff has made inconsistent statements about her symptoms to her treating providers or to the ALJ. Remand for an immediate award of benefits is appropriate in this case, particularly where it has been over four years since the SSA terminated plaintiff's benefits.

///

///

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment. The Court REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate payment of benefits.

**IT IS SO ORDERED**.

Dated: October 1, 2019

_____
SUSAN ILLSTON
United States District Judge